`UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| ALIENGEAR UNIVERSAL, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | _____ CIV. _____ |
| | : | |
| | : | |
| THOMAS TEDDER, | : | |
| an individual, | : | **JURY TRIAL DEMANDED** |
| TEDDER INDUSTRIES, LLC | : | |
| d/b/a ALIEN GEAR HOLSTERS, | : | |
| TEDDER PROPERTIES, LLC, and | : | |
| TEDDER STRUCTURES, LLC, | : | |
| | : | |
| Defendants. | : | |

_____:

## COMPLAINT

**PLAINTIFF ALIENGEAR UNIVERSAL, LLC,** a New York limited liability company ("AlienGear Universal" or "Plaintiff"), by and through its undersigned counsel the **Gioconda Law Group PLLC**, hereby complains and alleges against **DEFENDANT THOMAS TEDDER**, an individual ("Tedder"), **DEFENDANT TEDDER INDUSTRIES, LLC D/B/A ALIEN GEAR HOLSTERS** ("Tedder Industries"), **DEFENDANT TEDDER PROPERTIES, LLC** ("Tedder Properties"), and **DEFENDANT TEDDER STRUCTURES, LLC** ("Tedder Structures") (collectively, "Defendants"), as follows upon information and belief, except for allegations related to Plaintiff or Plaintiff's counsel, which are made on personal knowledge:

**NATURE OF THE ACTION**

1.     AlienGear Universal, LLC advertises and sells a wide variety of fashionable futuristic products to consumers, including:  belts, hats and caps, apparel such as t-shirts, sweatshirts and children's clothing, as well as laptop skins, iPhone cases, and jewelry such as necklaces, scarves and wristwatches, using its federally registered trademarks for **AlienGear**®.

2.     This action arises from Defendants' manufacturing, advertisement, sale and shipment of various products to consumers, including but not limited to:  leather, plastic and fabric gun holsters, belts, concealed carry holsters, hats and caps, as well as apparel including t-shirts and related goods, in connection with the identical and/or confusingly similar terms **AlienGear**, **Alien Gear**, and **Alien Gear Holsters** (the "Infringing Products").

3.     AlienGear Universal brings this civil action to obtain monetary and injunctive relief for Defendants' direct and contributory acts of trademark counterfeiting and willful infringement of Plaintiff's federally registered trademarks for **AlienGear**® and related trade dress infringement, false advertising, unfair competition and cybersquatting.

4.     Furthermore, Tedder's/Tedder Industries' promotion of dangerous firearms is irreparably tainting Plaintiff's trademarks in the marketplace and in the minds of consumers.

5.     Worse yet, Tedder's/Tedder Industries' promotional and marketing materials contain offensive images of young children brandishing firearms and insensitive jokes about deadly guns, assault weapons and violence.  Tedder Industries' recent politically-charged criticism of police officers in its social media accounts have drawn extremely negative attention, and forced Thomas Tedder and Tedder Industries to apologize publicly to consumers and police departments.

6.      Despite Tedder Industries having been notified and warned to cease and desist all trademark infringement in writing on two separate occasions by counsel, Defendants have unfortunately chosen to continue their conduct in bad faith, all while dramatically expanding their sales and advertising of Infringing Products.

7.      It is clear that if Defendants are not enjoined from willfully trading on the goodwill and reputation established by Plaintiff in its federally registered and unregistered trademarks and unfairly competing with Plaintiff, consumers and potential consumers will continue to be confused as to the source, sponsorship and approval of their products.

8.      In fact, dozens of instances of actual consumer confusion are documented, conclusively demonstrating that harm to AlienGear Universal is not only likely to occur, such injuries are already occurring.

## JURISDICTION AND VENUE

9.      This action seeks preliminary and permanent injunctive relief, monetary damages and attorneys' fees because of Defendants' direct and contributory: (i) trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (ii) trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114; (iii) trade dress infringement, false designation of origin, false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iv) cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d)(1)(A); (v) trademark infringement, trade dress infringement, false advertising and unfair competition in violation of New York common law; and (vi) Deceptive Acts and Practices Unlawful In Violation of the New York General Business Law (N.Y. Gen. Bus. Law §§ 349 and 350).

10.     This Court has original federal question jurisdiction for the claims arising under federal law and supplemental jurisdiction over the New York state law claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 1338(b) and 1367(a).

11.     Defendants are subject to personal jurisdiction in this District, as they are regularly transacting relevant business in this District, and regularly and intentionally advertising, promoting, marketing, selling and shipping Infringing Products to consumers and prospective consumers located in New York State and this Judicial District and knowingly contributing and/or inducing other Defendants to do so.

12.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims contained herein occurred in this Judicial District; and 28 U.S.C. § 1391(c), as each defendant that is a corporation resides in this Judicial District because each is subject to personal jurisdiction in this Judicial District at the time this action is being commenced.

## PARTIES

### Plaintiff AlienGear Universal, LLC

13.     **PLAINTIFF ALIENGEAR UNIVERSAL, LLC** is a New York limited liability company with a principal place of business in New York and this Judicial District located at 244 Madison Avenue, New York, NY 10016-2817.  Plaintiff and Plaintiff's principal are citizens and residents of New York respectively, and regularly do business in New York and this Judicial District.   See **Exhibit 1** (screenshot of front page of Plaintiff's website ***http://www.Alien-Gear.com***).

**COMPLAINT**                                    4

14.     Plaintiff and its predecessor-in-interest Mr. Conrad Christopher Clarke (Plaintiff's predecessor-in-interest and principal) has been continuously using several "AlienGear" trademarks in connection with a wide variety of products since as early as 2009, in Trinidad and in the United States.

15.     Photographs of specimens of just some of Plaintiff's **AlienGear**®-branded fashionable products are depicted in **Figures 1** to **12**:



**FIG. 1**



**FIG. 2**



**FIG. 3**



| | |
|---|---|
| **FIG. 4A (Front)** | **FIG. 4B (Reverse)** |
| **FIG. 5** | **FIG. 6** |
| **FIG. 7** | **FIG. 8** |



| FIG. 9 | FIG. 10 |
| FIG. 11 | FIG. 12 |

16.     Plaintiff's upbeat **AlienGear**®-brand identity and futuristic message states that it "represents the coming of the space age" and "illustrates the infinite wonders of space, our technological progress, scientific theories, mankind's endless possibilities, the origin of our birth, the evolution of our species, and the upcoming age of the alien."   Plaintiff's brand identity stresses "unity", "dismisses the concept of race and social segregation," and focuses on "one universal experience".  See **Figure 13**:



**ALIENGEAR** represents the coming of the space age and the influence this era will have on our world. It illustrates the infinite wonders of space, our technological progress, scientific theories, mankind's endless possibilities, the origin of our birth, the evolution of our species, and the upcoming age of the alien. But most importantly, it represents life and existence. A sense of purpose. For all living things. It represents the future. It represents our interconnection with one another, the planet, the cosmos, and any other beings that we share this magnificent universe with. Finally, it represents us as individuals, and as a whole, while at the same time touching on some of our deepest questions and innermost thoughts, such as: who are we? Where did we come from? What is our purpose on this planet? And the most important... Are we alone?

*"Don't Fear It, Wear It"*



**ALIENGEAR** is made to bring enlightenment to the individual wearing it regarding our existence and cosmic purpose, by helping us view all life across the universe as a collective experience, not just a singular event.

*"Unleash Your Inner Alien"*



**ALIENGEAR** spreads messages of consciousness and unity through fashion. It does this by using the perspective of advanced extraterrestrial beings who consider us primitive creatures. The brand focuses on their outlook on humanity as a single species, putting mankind's fate into question, using a perception that dismisses the concept of race and social segregation. They bring to light the common struggles we all face as a people. Issues such as conflicts in life, personal survival, and the desire to carry out a meaningful purpose are all addressed, as one universal experience.

*"Get In Gear"*

**FIG. 13**

17.    To maintain and safeguard its positive brand identity, many of Plaintiff's products are affixed with a hangtag incorporating its futuristic theme, emphasizing the importance of individuality, and also notifying potential infringers that "AlienGear is a Registered Trademark. Any unauthorized sale, reproduction or distribution of products carrying the AlienGear logo or any of its characteristics will result in severe legal action and maximum penalty under the law." See **Figure 14**:



**FIG. 14**

18.     Below are photographs of some of Plaintiff's products affixed with this hangtag being offered for sale in retail stores (**Figure 15** and **Figure 16**):



**FIG. 15**



**FIG. 16**

19.    To promote, market, advertise and directly sell its highly-fashionable products to consumers, Plaintiff maintains a robust Internet presence.

20.    For example, Plaintiff and/or its principal maintain active social media sites and Internet websites:

a.    **Café Press:** Plaintiff markets and sells over three hundred different types of Plaintiff's AlienGear®-branded products on Café Press, including but not limited to:  t-shirts, jerseys, golf shirts, tank tops, sweatshirts, teddy bears, children's water bottles, children's sippy cups, baby bibs, baby blankets, diaper bags, mugs, steins, water bottles, necklaces, aprons, keepsake boxes, wall clocks, throw pillows, shower curtains, pillow cases, duvet covers, puzzles, picture frames, golf balls, area rugs, curtains, blankets, beach towels, potholders, bathmats, tote bags, shopping bags, messenger bags, luggage tags, lunch bags, laundry bags, duffel bags, laptop skins, iPad and iPhone cases, greeting cards, note cards, posters, prints, decals, banners, buttons, magnets, bumper stickers, balloons, license plate frames, jewelry such as necklaces, earrings, charms, cufflinks and rings, scarves, ties, wristwatches, briefs, pajamas, pet tags and ornaments (*http://www.cafepress.com/AlienGearApparel*, attached as **Exhibit 2**);

b.    **Zazzle:** Plaintiff markets and sells different types of Plaintiff's AlienGear®-branded products on Zazzle including but not limited to belts and hats (*https://www.zazzle.com/AlienGear*, attached as **Exhibit 3**);

c.    **Facebook:** Plaintiff has over 103,000 "likes" and subscribed followers on Facebook (*https://www.facebook.com/AlienGear*, attached as **Exhibit 4**);

d.    **Twitter:**    Plaintiff has over 71,000 subscribed followers on Twitter (*https://www.twitter.com/AlienGear*, attached as **Exhibit 5**);

e.    **Instagram:**    Plaintiff has over 50,000 subscribed followers on Instagram (*https://www.instagram.com/AlienGear*, attached as **Exhibit 6**); and

f.    **Pinterest:** Plaintiff has over 9,000 subscribed followers on Pinterest (*https://www.pinterest.com/AlienGear*, attached as **Exhibit 7**).

21.    Plaintiff also endeavors to have many of its AlienGear®-branded products manufactured and/or labeled in local stores and printers.

22.     Most of the shirts that Plaintiff uses in its advertisements are made in the United States.  For example, Plaintiff has purchased merchandise from clothing stores in New York and had them further printed in Georgia.  Such products are tagged, collar prints applied, and patches sewn at the bottom of the shirt (also called the Jock Label) at another location, to discourage product counterfeiting.

23.     Because of the high quality and fashionable nature of the goods provided under the AlienGear® brand in conjunction with substantial resources dedicated to promoting the brand's positive theme and identity, Plaintiff's trademarks have become distinctive and synonymous with its brand, and now embody a substantial amount of valuable business goodwill.

24.     To protect its valuable intellectual property, Plaintiff owns the following U.S. Trademark Registrations (the "AlienGear Trademarks"), registration certificates attached hereto as **Exhibit 8**:

| Registration Number | Registered Trademark | First Use | First Use in Commerce | Filing Date | Registration Date | Relevant Class |
|---|---|---|---|---|---|---|
| 4,905,818 | **AlienGear** (Word Mark) | 6/23/09 | 4/9/11 | 7/10/14 | 2/23/16 | IC Class 25 |
| 4,593,087 |  | 6/23/09 | 4/9/11 | 12/13/09 | 8/26/14 | IC Class 25 |

25.     Plaintiff's U.S. federal registrations for the AlienGear Trademarks are valid and subsisting on the Principal Register, are in full force and effect, and have been duly assigned to AlienGear Universal, LLC by its principal and predecessor-in-interest.[1] See **Figures 17** and **18**:



| FIG. 17 | FIG. 18 |

26.     Plaintiff's U.S. federal registrations for the AlienGear Trademarks expressly cover a wide variety of goods in International Class 25, including but not limited to belts and a wide variety of athletic apparel.

27.     Plaintiff undertakes efforts to protect its brand and its brand identity.

28.     For example, Plaintiff's principal also filed to receive a trademark registration on both the name and logo for **ALIENGEAR DON'T FEAR IT, WEAR IT** in Trinidad in 2009, and successfully received a trademark registration from Trinidad in 2010 (TT/M/1/41526).

---

[1] See **Exhibit 9** (Trademark Assignment and ETAS Confirmation No. TM437455), reflecting that written assignments of the two trademark registrations from Registrant to Plaintiff were made, duly recorded with the USPTO, Assignment Recordation Division, and all fees duly paid.

## Defendants

29.     **DEFENDANT THOMAS TEDDER** is an individual who currently resides at 3142 East Rivercrest Drive, Post Falls, Idaho 83854, with a principal place of business at 4301 and 4411 West Riverbend Avenue, Post Falls, Idaho 83854.

30.     **DEFENDANT TEDDER INDUSTRIES, LLC D/B/A ALIEN GEAR HOLSTERS** is a limited liability company organized under the laws of the State of Idaho, with a principal place of business located at 4301 and 4411 West Riverbend Avenue, Post Falls, Idaho 83854.  Tedder Industries was formed on or about May 9, 2014.  Tedder Industries admits that it has "marketed and sold" handgun holsters "under the trade name[] "Alien Gear."  Complaint at Paragraph 3.5, *Tedder Industries, LLC d/b/a Alien Gear and d/b/a Old Faithful Holsters v. MTC Holsters*, LLC, 2:14-CV-00458-BLW, District of Idaho, Docket #1, Filed 10/27/14.

31.     **DEFENDANT TEDDER PROPERTIES, LLC** is a limited liability company organized under the laws of the State of Idaho with a principal place of business located at 4298 West Riverbend Avenue, Post Falls, Idaho 83854.  Tedder Properties was formed on or about December 24, 2014.  Tedder Properties' largest tenant is Tedder Industries.  The Infringing Products are regularly manufactured within, as well as sold and shipped by Tedder/Tedder Industries from Tedder Properties' locations, one of which is located at 4301 West Riverbend Avenue, Post Falls ID 83854-5101.

32.     **DEFENDANT TEDDER STRUCTURES, LLC** is a limited liability company organized under the laws of the State of Idaho with a principal place of business located at 441 West Riverbend Avenue, Post Falls, Idaho 83854.  Tedder Structures was formed on or about June 1, 2015.  Tedder Structures owns physical premises that are used by the other Defendants in connection with the Infringing Products.

**COMPLAINT**                                        14

## STATEMENT OF FACTS

33.     Thomas Tedder is the principal driving force, alter ego and/or predecessor-in-interest to Tedder Industries, Tedder Properties and/or Tedder Structures, with respect to the conduct complained of herein.

34.     There is an absence of the formalities and paraphernalia that are part and parcel of the proper corporate existence of Tedder Industries, Tedder Properties and Tedder Structures.

35.     There is an overlap in ownership, officers, directors, and personnel as between Tedder Industries, Tedder Properties and Tedder Structures.

36.     Defendants maintain common office space and street addresses.

37.     There is little, if any, independent business discretion displayed by Defendants.

38.     Defendants do not deal with one another at arms-length.

39.     Defendants are treated as intertwined revenue centers.

40.     The payment or guarantee of debts of some of Defendants are made by other Defendants.

41.     Each Defendant has and/or had property that was and/or is used by others of the Defendants as though they were its own.

42.     Defendants have commingled funds.

43.     Apart from Thomas Tedder, the only other known member of the limited liability Defendants is a close family member of Thomas Tedder, to wit, Alicia Tedder, Thomas Tedder's wife.

44.     Tedder Industries, Tedder Properties and Tedder Structures all share the same "Director of Finance," to wit, M. Colleen Lahr.  Ms. Lahr describes herself as "Director of Finance and Accounting at Tedder Industries LLC parent company of Alien Gear brand Holsters, Alien Gear brand gunbelts…"

45.     Furthermore, Defendants intentionally abused the corporate form to shield and preserve their profits generated from unlawful conduct by, *inter alia*, investing those same profits into the purchase of real estate and other assets to further promote their unlawful conduct.

46.     For example, the manufacturing and distribution facility utilized by Thomas Tedder and Tedder Industries to manufacture and ship Infringing Products to consumers is owned entirely by Tedder Properties.

47.     In its initial corporate filing, Tedder Industries listed only Thomas Tedder as its "Member and Manager."

48.     In 2017, Tedder Industries listed both Thomas Tedder and his wife, Ms. Alicia Tedder, as Tedder Industries' "Manager" and "Member" respectively, in its corporate filings.

49.     In its initial corporate filing, Tedder Properties listed only Thomas Tedder as its "Member and Manager."

50.     In 2017, Tedder Properties lists only Defendant Thomas Tedder as its "Manager."

51.     In its initial corporate filing, Tedder Structures listed only Thomas Tedder as its "Member."

52.     Thomas Tedder engaged in complained-of conduct in his personal capacity before Tedder Industries, Tedder Properties and/or Tedder Structures were formed.

53.     The Infringing Domain Name was registered on or about November 2, 2012 by Thomas Tedder in his personal capacity, with his previous residential street address of 10225 Old 81 Loop, Rudy, Arkansas 72952.[2]  See **Exhibit 10.**

54.     Thomas Tedder and Tedder Industries are currently advertising, manufacturing, offering for sale and selling gun holsters, belts and related goods, using the name "**ALIEN GEAR**."

55.     Among the top five (5) keywords from Internet Search Engines that send consumers and prospective consumers to the *AlienGearHolsers.com* website is: "alien gear" and "aliengear."

56.     Consumers and prospective consumers who arrive at the *AlienGearHolsters.com* website are frequently directed there by Facebook and Google.

57.     Thomas Tedder and Tedder Industries use the term **#aliengear** as their name on Instagram: *https://www.instagram.com/explore/tags/aliengear/*

58.     A side-by-side comparison of Plaintiff's and Defendants' uses is included below:

---

[2] It is unclear if and when Thomas Tedder transferred ownership of the Infringing Domain Name, as the Registrant of the Infringing Domain Name has apparently paid its Registrar to maintain a cloak of anonymity through a proxy.

| PLAINTIFF'S TRADEMARKS AND USES | DEFENDANTS' USES |
|---|---|
| AlienGear®<br><br>#aliengear (Facebook)<br><br>Alien Gear<br><br>AlienGear Universal | AlienGear<br><br>#aliengear (Twitter)<br><br>Alien Gear<br><br>Alien Gear Holsters |
| www.Alien-Gear.com | www.AlienGearHolsters.com |
|  |  |
|  |  |

59.     Thomas Tedder and/or Tedder Industries states on their Facebook page that Tedder Industries is one of the largest and fastest growing manufacturers of gun holsters and accessories for concealed carry in the United States.

## Defendants' Substantial New York Contacts

### *Ongoing Sales and Shipments of Infringing Products to New York Consumers[3]*

60.     Thomas Tedder and Tedder Industries intentionally and regularly advertise, market, promote, offer to sell and sell Infringing Products to consumers and prospective consumers residing in New York and this Judicial District through its online retail presence.

61.     Thomas Tedder and Tedder Industries regularly conduct and solicit ongoing, regular business in New York, engage in a persistent course of conduct relating to New York, and derive substantial revenue from goods purchased by New York residents.

62.     Attached are documents reflecting the ongoing sales and intentional shipments of numerous Infringing Products by Thomas Tedder and/or Tedder Industries from Tedder Properties'/Tedder Structures' manufacturing and shipping facilities to multiple residential and commercial addresses located in New York and this Judicial District.  See **Exhibit 11** (examples of many sales and shipments of Infringing Products to New York consumers from Defendants through *AlienGearHolsters.com*, *Amazon.com*, *eBay.com* and *Walmart.com*).

63.     Thomas Tedder and Tedder Industries regularly advertise, offer to sell and sell Infringing Products to consumers and prospective consumers residing in New York and this Judicial District through Tedder's/Tedder Industries' fully-interactive Internet website associated with the domain name ***AlienGearHolsters.com*** (the "Infringing Domain Name"), and through online retail store websites such as *Walmart.com*, *Amazon.com*, as well as through *eBay.com*.

---

[3] Tedder Industries itself has previously alleged in another case that its adverse party "purposefully availed itself of the benefits and burdens of conducting business within" a state and Judicial District because it accepts offers for "products for sale, accepts purchase orders, accepts purchase funds and ships products" to that same state "by way of an online retail presence."  Complaint at Paragraph 1.7, *Tedder Industries, LLC d/b/a Alien Gear and d/b/a Old Faithful Holsters v. MTC Holsters, LLC*, 2:14-CV-00458-BLW, District of Idaho, Docket #1, Filed 10/27/14.  The same is true here for Defendants and New York.

64.     Thomas Tedder and Tedder Industries intentionally use their fully-interactive Internet website associated with the Infringing Domain Name to target consumers and prospective consumers, including those residing in New York and this Judicial District.

65.     Thomas Tedder and/or Tedder Industries intentionally encourage such consumers and prospective consumers to "live chat" with Tedder's/Tedder Industries' customer service representatives, ask questions and transact business to purchase Infringing Products, and have such Infringing Products shipped to New York from Tedder Properties' manufacturing facility and shipping center in Post Falls, Idaho.  See **Exhibit 12** (screenshots of *AlienGearHolsters.com* interactive website).

66.     Thomas Tedder and/or Tedder Industries use their interactive Facebook page to target consumers and prospective consumers, including those residing in New York and this Judicial District, and encourage such consumers and prospective consumers to "live chat" with customer service representatives through Facebook messaging, encouraging consumers and prospective consumers to ask questions and transact business to purchase Infringing Products and have such Infringing Products shipped to New York.  See **Exhibit 13** (screenshot of Tedder's/Tedder Industries' Facebook page).

67.     Thomas Tedder and/or Tedder Industries maintain an active retail store on *eBay.com*, which offers free shipping on hundreds of Infringing Products to consumers and prospective consumers, including those residing in New York and this Judicial District.  See **Exhibit 14** (screenshot of Tedder's/Tedder Industries' eBay store).

*Regular Transactions of Relevant Business in New York*

68.     In addition to multiple sales and shipments of Infringing Products to New York consumers, Thomas Tedder and/or Tedder Industries have regularly transacted significant business with other residents of New York, and have purposely availed themselves of the privilege of conducting business here.

69.     Thomas Tedder and/or Tedder Industries have entered into multiple commercial transactions for processing significant amounts of payments for the Infringing Products with companies headquartered in New York and this Judicial District.

70.     For example, Thomas Tedder and/or Tedder Industries have entered into written commercial merchant agreements for the sale of Infringing Products with **American Express Company** located in this Judicial District at 200 Vesey Street, New York, NY 10285-3106.

71.     In a written commercial merchant agreement with American Express Company, Thomas Tedder and/or Tedder Industries agreed that all disputes between the parties thereto shall be resolved before an arbitrator located in New York, New York.   Tedder Industries and American Express expressly agreed that the arbitrator shall apply New York law and applicable statutes of limitations and shall honor claims of privilege recognized by New York law.

72.     Thomas Tedder and/or Tedder Industries have entered into written commercial merchant agreements for the sale of Infringing Products through **MasterCard**, located in this Judicial District at 2000 Purchase Street, Purchase (Westchester County) NY 10577.

73.     Thomas Tedder and/or Tedder Industries regularly offer discounts through online promotional coupons and codes to consumers and prospective consumers, including consumers and prospective consumers residing in New York and this Judicial District.

74.     Thomas Tedder and/or Tedder Industries have entered into a written commercial agreement and/or paid a fee to ***Ziff Davis, LLC***, headquartered in this Judicial District at 28 East 28th Street, New York, NY 10016, T: (212) 503-3500, and/or Ziff Davis LLC's wholly-owned subsidiary ***Offers.com, LLC***, for placement of online coupon codes offering discounts on Infringing Products to be displayed to consumers and prospective consumers on ***Offers.com.***

75.     Thomas Tedder and/or Tedder Industries also regularly transact significant business and/or have entered into commercial agreements with **several major publishers** located in this Judicial District, paying these New York residents to advertise the Infringing Products to consumers and prospective consumers residing in New York, this Judicial District, and elsewhere:

     a.   ***Athlon Outdoors, Inc***., located in this Judicial District at 60 East 42nd Street, New York, NY 10165, T: (212) 478-1910, for numerous print advertisements for Infringing Products appearing regularly in magazines and special interest publications sold to consumers in this Judicial District, including:

         i.   *AK-47*
        ii.   *America's Handgun:  Model 1911*
       iii.   *American Frontiersman*
       iv.   *AR Rifleman*
        v.   *Ballistic*
       vi.   *BlackGuns 2017*
      vii.   *Buyer's Guide Handguns*
     viii.   *Combat Handguns*
       ix.   *Complete Book of Autopistols*
        x.   *Complete Book of Guns*
       xi.   *Complete Book of Handguns*
      xii.   *Complete Book of Reloading*
     xiii.   *Complete Book of Revolvers*
     xiv.   *Complete Book of 1911's*
      xv.   *Concealed Carry Handguns*
     xvi.   *Glock Autopistols*
    xvii.   *Gun Annual*
   xviii.   *Gun Buyer's Annual 2017 Buyer's Guide*
     xix.   *Gun Buyer's Guide*
      xx.   *Guns of the Old West*
     xxi.   *Guns & Weapons*
    xxii.   *Gun Show*

xxiii.  *Gun 2016 Buyer's Guide*
xxiv.  *Military Surplus*
xxv.  *Personal & Home Defense*
xxvi.  *Pocket Pistols 2017 Buyer's Guide*
xxvii.  *Rimfires*
xxviii.  *Special Weapons*
xxix.  *Survivor's Edge*
xxx.  *Tactical Weapons*
xxxi.  *The New Pioneer*

b.  **Outdoor Sportsman Group**, headquartered in this Judicial District at 1040 6th Avenue, 12th Floor, New York, NY 10018-3703, T: (212) 852-6646, for numerous print advertisements for Infringing Products appearing regularly in magazines and special interest publications sold in this Judicial District, including:

   i.  *Combat Arms*
   ii.  *Complete Book of the Model 1911*
   iii.  *Firearms News*
   iv.  *Guns & Ammo*
   v.  *Handguns*
   vi.  *RifleShooter*
   vii.  *Shooting Times*

c.  **TEN: The Enthusiast Network, LLC**, located in this Judicial District at 261 Madison Avenue, 6th Floor, New York, NY 10016, T: (212) 915-4569, for numerous print advertisements regularly appearing in magazines and special interest publications sold in this Judicial District including *RECOIL*

d.  **F+W Media, Inc.,** located in this Judicial District at 1140 Broadway, 14th Floor, New York, NY 10001, (212) 447-1400, for print advertisements regularly appearing in magazines and special interest publications sold in this Judicial District including *Gun Digest* and *Modern Shooter*

76.  As a result of these regular and ongoing commercial transactions with major magazine and digital media publishers located in this Judicial District and elsewhere, Tedder's/Tedder Industries' print and digital advertisements for Infringing Products regularly appear in many magazines, special interest publications and digital offerings that are widely sold and distributed to consumers and prospective consumers residing in New York and throughout this Judicial District.  See, e.g., **Exhibit 15:**

a.  receipts showing several sales of *Guns & Ammo* August 2017 in this Judicial District; magazine cover and masthead; and Tedder's/Tedder Industries' advertisement of Infringing Products appearing on page 23 of magazine;

b.  receipts showing several sales of *RECOIL* Issue 31 magazine in this Judicial District; magazine cover and masthead; and Tedder's/Tedder Industries' full-page advertisement of Infringing Products on page 85 of magazine;

c.  receipts showing several sales of *2017 Concealed Carry Handguns Buyer's Guide* in this Judicial District; magazine cover and masthead; Tedder's/Tedder Industries' full-page advertisement of Infringing Products on inside cover of magazine;

d.  receipts showing sale of September/October 2017 *Combat Handguns* in this Judicial District; magazine cover and masthead; Tedder's/Tedder Industries' full-page advertisement of Infringing Products on inside rear cover and page 21 of magazine;

e.  receipts showing several sales of *RECOIL Concealment* Issue 6 in this Judicial District; magazine cover and masthead, Tedder's/Tedder Industries' full-page advertisement of Infringing Products on page 27 of magazine;

f.  receipt showing sale of *REVOLVERS 2017* in this Judicial District; magazine cover and masthead, Tedder's/Tedder Industries' full-page advertisement of Infringing Products on rear cover of magazine;

g.  receipt showing sale of *AMERICAN HANDGUNNER CONCEALED CARRY 2017 SPECIAL EDITION* in this Judicial District; magazine cover and masthead, Tedder's/Tedder Industries' full-page advertisement of Infringing Products on inner front cover of magazine;

h.  receipt showing sale of *AMERICAN HANDGUNNER SEPTEMBER/OCTOBER 2017* in this Judicial District; magazine cover and masthead, Tedder's/Tedder Industries' advertisement of Infringing Products on page 68 of magazine;

i.  receipt showing sale of *AMERICAN HANDGUNNER PERSONAL DEFENSE SPRING 2017 SPECIAL EDITION* in this Judicial District; magazine cover and masthead; Tedder's/Tedder Industries' advertisement of Infringing Products on inside front cover of magazine;

j.  receipt showing sale of *PocketPISTOLS 2017 Buyer's Guide* in this Judicial District, magazine cover and masthead, Tedder's/Tedder Industries' advertisement of Infringing Products on rear cover of magazine; and

k.   receipt showing sale of *SURVIVOR'S EDGE Fall 2017* in this Judicial District; magazine cover and masthead, Tedder's/Tedder Industries' advertisement of Infringing Products on inside rear cover of magazine.

77.   Below is a list of additional print, digital and other publications regularly sold and distributed to consumers and prospective consumers residing in New York and this Judicial District, in which Thomas Tedder and/or Tedder Industries have intentionally paid to place print and/or digital advertisements for Infringing Products:

- America's 1st Freedom
- American Rifleman
- American Shooting Guide
- Front Sight (USPSA)
- Gun Annual
- Gun World
- Gun World: Concealed Carry Handguns
- Guns Magazine
- Handguns Buyer's Guide
- Home Defender
- IDPA Tactical Journal
- Knives Illustrated
- Law Enforcement Product News
- Nascar: Pole Position
- Outdoor Industry News
- Police and Security News
- Shooting Illustrated
- Shooting Industry
- The Tactical Edge
- World of Firepower

**Defendants' Tangible Intent to Target New York Consumers**

78.   Thomas Tedder and/or Tedder Industries have intentionally purchased "adwords" from Google, Inc. to target New York consumers, stating in such paid advertisements: "**Conceal in Comfort With the Best Concealed Carry Holster Available In New York**".  See **Exhibit 16** and **Figure 19**:



**FIG. 19**

79.    In part to promote the Infringing Products to consumers, including to those consumers located in New York and this Judicial District, Thomas Tedder has intentionally appeared on New York-based cable news television networks on behalf of Tedder Industries. For example, see screenshots of Thomas Tedder on *Fox Business Network*, located in this Judicial District at 1211 Avenue of the Americas, New York, NY 10036.  See **Figures 20** and **21**:



**FIG. 20**



**FIG. 21**

80.    Thomas Tedder and/or Tedder Industries have intentionally and deliberately targeted New York residents including consumers and prospective consumers in this Judicial District, giving such consumers and prospective consumers an "**EXCLUSIVE GUIDE**" on details about how to obtain a concealed carry firearm permit from New York law enforcement authorities on the *AlienGearHolsters.com* blog (see **Exhibit 17** and **Figure 22**):



**FIG. 22**

81.     Thomas Tedder and/or Tedder Industries have also posted New York-specific news stories and political commentary to their Facebook page.  For example, on August 1, 2017, Tedder/Tedder Industries wrote on Facebook: "Could it be possible??  New York's Strict Gun-Control Laws May Soon Be Lifted By The Federal Government".  This post was accompanied by a local news story discussing New York's gun control laws.

82.     By all of the foregoing conduct, Defendants have manifested a tangible intent to target New York consumers and prospective consumers.

83.     Defendants have achieved this goal, as residents located in New York and this Judicial District regularly and publicly discuss their purchase of Infringing Products directly from Tedder/Tedder Industries.   For example, on a general discussion blog called *NYFirearms.com*, New York consumers residing in Westchester, Putnam, Dutchess, Orange, Sullivan and other counties in this Judicial District discussed their purchase of Infringing Products from Tedder/Tedder Industries, including posting photographs thereof.

**Tedder's/Tedder Industries' Rejected Trademark Applications**
**and Notice of Plaintiff's Rights**

84.      On March 18, 2014, Old Faithful Holsters, a "sole proprietorship" owned and managed solely by Thomas Tedder, located at 7900 N. Franklin Street, Couer d'Alene, Idaho 83815, applied for a federal trademark registration for "Alien Gear Holsters" in Class 13 for "gun holsters" and Class 25 for "Clothing, namely shirts and caps".

85.      Tedder's/Old Faithful Holsters' trademark attorney and correspondent Kamran Emdadi, Esq. submitted a sworn declaration to the United States Patent and Trademark Office ("USPTO") stating, in relevant part:

   a. In International Class 013, the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 02/01/2013, and first used in commerce at least as early as 02/01/2013, and is now in use in such commerce. The applicant is submitting one (or more) specimen(s) [depicted in **Figure 23**] showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) screenshot of website.



**FIG. 23**

b.  In International Class 025, the mark was first used by the applicant or the applicant's related company or licensee or predecessor in interest at least as early as 02/01/2013, and first used in commerce at least as early as 02/01/2013, and is now in use in such commerce. The applicant is submitting one (or more) specimen(s) [depicted in **Figure 24**] showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) Screenshot of website.



**FIG. 24**

86.     In August 2014, Plaintiff's principal first became aware that Tedder/Old Faithful Holsters had been selling products that were infringing Plaintiff's trademarks.

87.     Plaintiff's principal also discovered that Tedder/Old Faithful Holsters had apparently retained trademark counsel and filed to register federal trademarks for "**ALIEN GEAR HOLSTERS**" and "**ALIEN GEAR HOLSTERS plus Design**" with the USPTO on or about March 18, 2014.

88.     However, Tedder Industries was not formed until May 9, 2014.

89.     On or about June 24, 2014, the USPTO's Trademark Examiners duly examined Tedder's/Old Faithful Holsters' applications.

90.     The USPTO Trademark Examiner sent written responses to Tedder's/Old Faithful Holsters' counsel, refusing to register these trademark applications, finding, in relevant part that

there may be a likelihood of confusion with Plaintiff's principal's pre-existing trademark registration and pending application for AlienGear:

> Information regarding [Plaintiff's principal's] pending Application Serial No. 77892297 [for AlienGear] is enclosed. The filing date of the referenced application precedes the applicant's] filing date. There may be a likelihood of confusion between the two marks under Trademark Act Section 2(d), 15 U.S.C. §1052(d). If the referenced application registers, registration may be refused in this case under Section 2(d). 37 C.F.R. §2.83; TMEP §§1208 *et seq*. Therefore, upon entry of a response to this Office action, action on this case may be suspended pending final disposition of the earlier-filed application. If the applicant believes there is no potential conflict between this application and the earlier-filed application, then the applicant may present arguments relevant to the issue in a response to this Office action.

91.    In response, Tedder's/Old Faithful Holsters' counsel addressed other concerns of the Examiner, but stated "The applicant reserves the right to respond to the prior pending application for Serial No. 77892297 if necessary."

92.    Subsequently, the USPTO finally refused registration, and stated that, in relevant part that Plaintiff's principal's trademarks and Tedder Industries' trademarks were "**identical in commercial impression**" (emphasis added) and that the parties' goods are related and/or identical:

> The applicant has applied to register the mark "ALIENGEAR HOLSTERS" for, "holsters" in International Class 13 and "clothing, namely, shirts and caps" in International Class 25.

> [Plaintiff's principal] is the owner of the mark (U.S. Reg. No. 4593087) "ALIENGEAR DON'T FEAR IT, WEAR IT" and design and for in relevant part "caps" and "shirts" in International Class 25.

> With respect to the similarities of the marks, the marks in this case are identical in commercial impression…. Regarding the relatedness of the goods and/or services, the applicant and registrant have related goods and identical goods and/or services…. In sum, based on the foregoing, registration is denied on the Principal Register under Section 2(d).

93.     On or about June 18, 2014, Old Faithful Holsters merged into Tedder Industries. See **Exhibit 17** (press release announcing merger).

94.     On or about December 24, 2014, Tedder's/Old Faithful Holsters' new trademark attorney assigned this pending application to Tedder Industries.

95.     Tedder Industries' counsel failed to respond to the USPTO's Final Office Action.

96.     The USPTO therefore deemed both of Tedder Industries' trademark applications legally abandoned as of July 29, 2015.

97.     Tedder/Old Faithful's/Tedder Industries' counsel's failure to respond or appeal to the USPTO's Final Office Action demonstrates that Tedder/Tedder Industries were aware that the USPTO was correct, and that there is, indeed, a likelihood of consumer confusion.

98.     On August 1, 2014, Plaintiff's principal's counsel sent a letter to Tedder/Old Faithful Holsters, informing Tedder's/Old Faithful Holsters' counsel that it was infringing Plaintiff's principal's rights by using confusingly similar trademarks in connection with "holsters", as well as "clothing, namely, shirts and caps."   See **Exhibit 19** ("First Cease and Desist Letter.").

99.     On or about August 25, 2014, trademark counsel purporting to represent Tedder/Old Faithful Holsters responded to the First Cease and Desist Letter by e-mail using a Gmail account.  See **Exhibit 20.**

100.    In that e-mail response, Tedder's/Old Faithful Holsters' trademark counsel did not dispute the validity or enforceability of Plaintiff's principal's rights, but noted that Plaintiff's principal's trademark registrations had not issued yet.

101.    In that e-mail response, Tedder's/Old Faithful Holsters' trademark counsel wrote that Tedder/Old Faithful would be "expressly abandoning" its own pending trademark

applications related to clothing, and "removing any references to clothing and apparel from our web page, social media sites, and the like." See id.

102.    However, the response e-mail from Tedder's/Old Faithful Holsters' trademark counsel did not address all of Plaintiff's principal's concerns, nor did any of Defendants comply with any of the other reasonable requests of Plaintiff's principal.  See Id.

103.    Subsequently, Plaintiff's principal's counsel sent a second letter to Tedder's/Old Faithful Holsters' trademark counsel on September 24, 2014, reiterating the same concerns, and renewing the same demands ("Second Cease and Desist Letter").  See **Exhibit 21.**

104.    No further response has been forthcoming from Thomas Tedder, Tedder Industries or any of Defendants to the Second Cease and Desist Letter.

## Defendants' Continuing Willful Conduct and Expansion

105.    While Tedder Industries apparently abandoned its trademark applications related to AlienGear, since 2014, Defendants have dramatically expanded their active and vicarious counterfeiting and infringement of Plaintiff's trademark rights, and reaped untold profits by doing so.

106.    For example, in October 2014, after having received both the First Cease and Desist Letter and Second Cease and Desist Letter, and after its merger with Old Faithful Holsters, Tedder Industries issued a nationwide press release stating, in relevant part, that it was "ramping up manufacturing" as "consumer demand continues to grow for Alien Gear Holsters' newest IWB, the 'Cloak Tuck 2.0'.  As a result, the 'Cloak Tuck 2.0' has shattered Alien Gear Holsters' daily sales records, causing delayed shipping times while fueling product demand. Thomas Tedder, President of Tedder industries admits, 'the demand for the 'Cloak Tuck 2.0' has been greater than expected and we're doing our best to accommodate each and every customer.' As a response, Tedder Industries is doubling their manufacturing line and streamlining many key processes at their Hayden, Idaho manufacturing facility."  See **Exhibit 22.**

107.    Furthermore, Defendants have bragged that their collective profits have allowed Tedder Properties to purchase an outlet shopping mall, much of which is used to manufacture and distribute the Infringing Products.  See **Exhibit 23**.

108.    Defendants have further bragged about their success and profitability to the news media.  For example:

- "And we're selling more this year than last year.  It just keeps climbing – record gun sales every year," said the 38-year-old CEO of Tedder Industries.…The company runs two shifts a day, seven days a week, with 180 employees packed tightly into three shops in Hayden and Coeur d'Alene."  *The Spokesman Review*, June 27, 2016;

- "'Our growth has been incredible.'  The company employed 30 people two years ago, but its workforce has since ballooned to 132.  'We're hiring 20 people now, so this summer we should be around 150,' Tedder said…Tedder said the company is producing 'several hundred' holsters per day.  He declined to be more specific on the number, citing proprietary information.  He estimates that it takes less than 10 minutes to manufacture each holster, which cost between $30 and $36 each." *Coeur d'Alene/Post Falls Press (AP), "Gun Holster Maker Firing on All Cylinders,"* April 25, 2015; and

**COMPLAINT**                                        34

- "The company grew and grew.  By 2014, he employed around 75 people and the next year 150.  By 2016, the holster manufacturer had 300 employees.  'Just crazy.  Just tripled every six months for years,' he said.  The growth led Tedder to purchase two buildings at the aging outlet mall in Post Falls."  KREM, *Booming business has big plans for Post Falls*, January 16, 2016.

109.    Tedder Industries has also submitted a sworn statement and specimen to the USPTO showing its ongoing advertisement and sale of its Infringing Products, well after it received the First Cease and Desist Letter and Second Cease and Desist Letter.  See Trademark Application Serial No. 86/652,507 for "Conceal in Comfort", specimen and sworn statement of use dated June 5, 2015.

110.    Additional examples of Infringing Products and infringing packaging are depicted in **Figures 25** to **32**:



|  |  |
|---|---|
| **FIG. 25** | **FIG. 26** |
| **FIG. 27** | **FIG. 28** |



| FIG. 29 | FIG. 30 |
| FIG. 31 | FIG. 32 |

111.    Tedder Industries admits that its products are now "ubiquitous in the United States' handgun holster market." Complaint at Paragraph 3.8, *Tedder Industries, LLC d/b/a Alien Gear and d/b/a Old Faithful Holsters v. MTC Holsters*, LLC, 2:14-CV-00458-BLW, District of Idaho, Docket #1, Filed 10/27/14.

112.    Thomas Tedder and Tedder Industries regularly travel throughout the United States to advertise and promote their Infringing Products.  For example, Thomas Tedder and/or Tedder Industries have advertised and promoted their Infringing Products at the National Rifle Association (NRA) Annual Meeting in Atlanta, Georgia from April 27 to 30, 2017 and the annual "Shot Shows" in Las Vegas, Nevada in 2015, 2016 and 2017.

113.    To promote their Infringing Products, Thomas Tedder and/or Tedder Industries post and re-post disturbing content on Twitter, Instagram and Facebook, including images of young children brandishing dangerous assault weapons and jokes about gun violence, death and destruction (see **Figures 33** to **44**):



| FIG. 33 | FIG. 34 |
|---------|---------|
| FIG. 35 | FIG. 36 |



|  |  |
|---|---|
| **FIG. 37** | **FIG. 38** |
| **FIG. 39** | **FIG. 40** |
| **FIG. 41** | **FIG. 42** |




| **FIG. 43** | **FIG. 44** |

114.    Thomas Tedder and Tedder Industries' employees and/or agents also regularly discuss the casual ownership of dangerous weapons in articles posted to their blog, such as:

a.  How to buy a gun as a gift for Father's Day ("Love comes in many forms.");

b.  Concealed carry of handguns while ice skating ("A simple answer as to how to safely concealed carry while ice skating:  don't fall.");

c.  Can I concealed carry in a polling place?  ("…you can also just elect to receive an absentee ballot and not have to worry about it.");

d.  Concealed carry in zoos and other animal parks ("Can a person concealed carry at a zoo? Technically yes; there aren't too many laws that specifically prohibit carrying in a zoo.");

e.  Considerations when carrying concealed this Christmas season ("As we've said plenty of times, being home doesn't mean being unarmed.  As a concealed carrier, you can still sit down to enjoy a good Christmas Eve dinner.");

f.  Giving a gun this Christmas?  ("It's always hilarious walking into a gun store around the holidays. Husbands and wives moving through the aisles, trying to search for that perfect gift for this Christmas season.  There's a lot of really good deals for gun owners out there but before you break out the plastic or the billfold, here's a couple important tips....");

g.  Concealed carry for bicycle commuters and recreational cyclists ("If there's any group of people that need to keep a concealed carry pistol on them, it's going to be bicyclists.");

h.  Concealed carry at the gym ("A lot of gyms are kept temperature regulated.  This means it is possible to keep either an inside the waistband concealed carry holster for a micro or sub compact when attached to a pair of track pants and covered by a track jacket.  This is probably the most ideal configuration.");

i.  Concealed carry on motorcycles ("If you plan to concealed carry while riding a motorcycle, we're covering some basic tips for how to ensure your favorite compact or full-size pistol can still be a favored travel companion.");

j.  When is a good time to tell a date you carry a concealed handgun? ("After all, a woman who can handle a firearm isn't waiting for a knight in shining armor to arrive – she is the knight."); and

k.  Why it's important to dehumanize your attacker ("Well, if you see them as an individual person who may have a family, friends and who jokes around with the person in front of them in line at the grocery store, you are not going to want to pull the trigger.").

115.    Thomas Tedder and/or Tedder Industries have issued highly controversial, politically-charged tweets that have enraged even their own customers and bloggers.  See, e.g., Blue Lives Matter, "Alien Gear Holsters Bashes Police for Shooting Man Who Was Shooting at Them," July 27, 2017 (*https://bluelivesmatter.blue/alien-gear-holsters-police-shooting/).*

116.    In response to the public outcry, Thomas Tedder/Tedder Industries blamed a "new employee", and was forced to publish the following public statement on or about July 28, 2017:

Yesterday, a new employee violated company social media policy by posting an inappropriate Facebook post about a police shooting.  This incident could not be further from who we are as a company.  As the owner of this company I am deeply sorry and offer my heartfelt apology.  Since the founding of this company, we have always been strong supporters of law enforcement.  I started this company because I believe in the right to bear arms.  I believe in the right of people to defend themselves.  In fact, one year ago we offered free holsters to our local law enforcement.

**COMPLAINT**                                    40

We have taken immediate actions to ensure this does not happen again.  While our social media policy has always prohibited political statements or personal statements, we will now have all posts reviewed by a supervisor to ensure compliance before posting.  We will also provide more training for all social media employees prior to starting their jobs as well as periodic training to again ensure they strictly follow policy.

As the founder of Tedder Industries, I assure you that we will continue to do what's best for our valued customers and support the issues that are important to them.  By offering the highest quality, innovative products on the market and outstanding customer service, we continue to be the best company for our customers.

117.   Tedder's/Tedder Industries' July 28, 2017 public statement contains a bizarre declaration, given the thousands of political statements posted on a daily basis on Tedder's Facebook page, blog, Instagram and Twitter accounts, including those reflected above in **Figures 33** to **44**: "...our social media policy has always prohibited political statements or personal statements...".

118.   A search of Facebook's Pages for "Alien Gear" or "AlienGear" retrieves the top two results: "Alien Gear Holsters" and Plaintiff AlienGear.  See **Figure 45**:



**FIG. 45**

119.    Finally, there are literally ***dozens*** of instances of documented actual confusion between Plaintiff and Defendants, including among consumers and prospective consumers residing in New York and this Judicial District.

120.    Instances of actual consumer confusion between Tedder/Tedder Industries and Plaintiff occur on a regular basis on Twitter, Facebook, Instagram in e-mails, instant messages and elsewhere.

121.    For example, the following quotes are taken directly from consumers who communicated with Plaintiff, erroneously believing that they were communicating with Tedder/Tedder Industries (see, e.g., **Exhibit 24**):

a. "Hi, I ordered a cloak tuck 2.0.  It's been almost 3 weeks and havnt gotten any tracking information or a shipping update… Noone answers when I call the number on your website …. Getting extremely Agitated.  For an American company this should not happen to its customers"

b. "If my holster does not show up today by the 'guaranteed' date my lawyer will be in touch.  I'm not playing games like all your other customers have."

c. "Hey guys, just bought a Ruger LCP 380.  Want an insdie the waist holder.  What you recommend"

d. "@AlienGear how about aliengear clip/mag holder.  Love the tuck 2.0 for my XD40 now something good to hold 2 extra clip with comfort"

e. "@AlienGear Do I get a commission when 5 of my friends bought your holster from my word it's a great holster clock tuck 2 and 3.0"

f. "@AlienGear Love my aliengear holsters, it's all I use, and I've tried several different brand.  Would love to do a giveaway with them some time"

g. "My wife surprised me with an @AlienGear Cloak Tuck 3.0 for Christmas, she knows me so well.

h. "Aliengear as a company is terrible.  I placed an order for 2 Cloak Tuck 3's on November 28th, they billed me on November 30th.  They state they were shipped on December 8th.  I have NOT received them as of today 12/18.  I have left 2 voice mails, sent 4 emails, and 2 requests for help from their website.  All with NO response.  I am disputing the charges with my creditcard company….Think twice before purchasing…This is a joke.  It's unfortunate since I hear the holsters are pretty good, unfortunately they can't run the company."

122.   It is clear that if Defendants' conduct is not enjoined by this Court, Defendants' willful, continued and unauthorized use of Plaintiff's AlienGear Trademarks will continue and expand and Plaintiff's trademarks will be irreparably damaged.

123.   Plaintiff and the public will continue to be harmed by Defendants' bad faith acts of direct and indirect trademark counterfeiting, trademark infringement, trade dress infringement, false advertising and unfair competition if the infringing activities are not ordered to cease.

## FIRST CLAIM FOR RELIEF

**Federal Trademark Counterfeiting of**
**U.S. Trademark Reg. No. 4,905,818 in International Class 25**
**in Violation of**
**Sections 32(1)(a) and (b) of the Lanham Act**
**(15 U.S.C. § 1114)**

**(AGAINST DEFENDANTS THOMAS TEDDER AND TEDDER INDUSTRIES)**

124.    Plaintiff hereby repeats each and every allegation set forth in paragraphs 1 to 123

above as if fully set forth herein.

125.    Sections 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b),

provide, in relevant part, that any person who shall, without the consent of the registrant –

(a)  use in commerce any reproduction, counterfeit, copy, or colorable imitation of
a registered mark in connection with the sale, offering for sale, distribution, or
advertising of any goods or services on or in connection with which such use is
likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply
such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints,
packages, wrappers, receptacles or advertisements intended to be used in
commerce upon or in connection with the sale, offering for sale, distribution, or
advertising of goods or services on or in connection with which such use is likely
to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter
provided.

126.    Thomas Tedder and/or Tedder Industries have used numerous designations that

are reproductions, counterfeits, copies and/or colorable imitations of Plaintiff's registered

trademarks in connection with goods for which Plaintiff holds federal trademark registrations.

127.    The marks that Tedder and/or Tedder Industries have used, including but not

limited to those used on belts and gun belts, are identical to and/or substantially indistinguishable

from Plaintiff's U.S. Trademark Reg. No. 4,905,818 in International Class 25.

128.    Additionally, without the consent of Plaintiff, Tedder and Tedder Industries have applied reproductions, copies and/or colorable imitations of Plaintiff's U.S. Trademark Reg. No. 4,905,818 in International Class 25 onto many related products, such as gun belt holsters and concealed carry holsters, in connection with the sale, offering for sale and/or distribution of goods for their own financial gain.

129.    Plaintiff has not authorized Tedder's or Tedder Industries' use of any of Plaintiff's AlienGear Trademarks to advertise, offer for sale, sell and/or distribute products.

130.    Tedder's/Tedder Industries' unauthorized use of Plaintiff's AlienGear Trademarks on or in connection with the advertising and sale of goods constitutes use of Plaintiff's registered marks in commerce.

131.    Tedder's/Tedder Industries' unauthorized use is likely to cause confusion, mistake or deceive; cause the public to believe that Tedder's/Tedder Industries' products are authorized, sponsored or approved by Plaintiff when they are not; and result in Tedder and Tedder Industries unfairly and illegally benefitting from Plaintiff's goodwill.

132.    Accordingly, Thomas Tedder and Tedder Industries have engaged in trademark counterfeiting in violation of Plaintiff's U.S. Trademark Reg. No. 4,905,818 in International Class 25, Sections 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b), and are liable to Plaintiff for all damages related thereto, including but not limited to actual damages, infringing profits and/or statutory damages, as well as attorney's fees.

133.    Tedder's/Tedder Industries' acts have caused, and will continue to cause, irreparable injury to Plaintiff.

134.    Plaintiff has no adequate remedy at law and is thus entitled to damages in an amount yet to be determined.

**COMPLAINT**                                        45

135.    Tedder's/Tedder Industries' egregious conduct in selling merchandise bearing the unauthorized trademark registration even after being notified thereof in writing, is willful and intentional, and thus this constitutes an exceptional case.

## SECOND CLAIM FOR RELIEF

**Contributory and/or Vicarious Federal Trademark Counterfeiting of
U.S. Trademark Reg. No. 4,905,818 in International Class 25
in Violation of
Sections 32(1)(a) and (b) of the Lanham Act
(15 U.S.C. § 1114)**

**(AGAINST DEFENDANTS TEDDER PROPERTIES AND TEDDER STRUCTURES)**

136.    Plaintiff hereby repeats each and every allegation set forth in paragraphs 1 to 135 above as if fully set forth herein.

137.    A landlord is responsible for the torts of those it permits on its premises "knowing or having reason to know that the other is acting or will act tortiously...." Restatement (Second) of Torts § 877(c) & cmt. d (1979).

138.    Tedder Properties and/or Tedder Structures had ample reason to know that counterfeit goods were being manufactured and/or sold on its premises, intentionally shielded itself from the lawful consequences of having such knowledge, and failed to evict and/or prevent its largest tenant, to wit, Tedder Industries, from continuing such unlawful conduct on its premises.

139.    Tedder Properties and/or Tedder Structures are therefore properly charged with actual and/or constructive knowledge of Tedder's/Tedder Industries' activities and sales, as each had sufficient knowledge or had sufficient reason to know that such activities were occurring on its premises and failed to act reasonably under the circumstances to prevent such unlawful conduct from occurring and/or continuing.

140.    Accordingly, Defendants Tedder Properties and/or Tedder Structures have engaged in contributory and/or vicarious trademark counterfeiting in violation of Plaintiff's U.S. Trademark Reg. No. 4,905,818 in International Class 25, Sections 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b), and are liable to Plaintiff for all damages related thereto, including but not limited to actual damages, infringing profits and/or statutory damages, as well as attorney's fees.

141.    Tedder Properties' and/or Tedder Structures' acts have caused, and will continue to cause, irreparable injury to Plaintiff.

142.    Plaintiff has no adequate remedy at law and is thus entitled to damages in an amount yet to be determined.

143.    Tedder Properties' and/or Tedder Structures' egregious conduct in knowingly contributing and inducing others to sell merchandise bearing the unauthorized trademark registration is willful and intentional, and thus this constitutes an exceptional case.

### THIRD CLAIM FOR RELIEF

**Federal Trademark Infringement in Violation of
Sections 32(1)(a) and (b) of the Lanham Act
(15 U.S.C. § 1114)**

**(AGAINST DEFENDANTS THOMAS TEDDER AND TEDDER INDUSTRIES)**

144.    Plaintiff hereby repeats each and every allegation set forth in paragraphs 1 to 143 above as if fully set forth herein.

145.    Sections 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b), provide, in relevant part, that any person who shall, without the consent of the registrant –

(a)  use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

146.   Tedder/Tedder Industries have used numerous designations that are reproductions, counterfeits, copies and/or colorable imitations of Plaintiff's registered trademarks in connection with goods for which Plaintiff holds federal trademark registrations.

147.   Additionally, without the consent of Plaintiff, Tedder and Tedder Industries have applied reproductions, counterfeits, copies and/or colorable imitations of Plaintiff's AlienGear Trademarks onto products in connection with the sale, offering for sale and/or distribution of goods for their own financial gain.

148.   Plaintiff has not authorized Tedder's/Tedder Industries' use of any of Plaintiff's AlienGear Trademarks to advertise, offer for sale, sell and/or distribute products.

149.   Tedder's/Tedder Industries' unauthorized use of Plaintiff's AlienGear Trademarks on or in connection with the advertising and sale of goods constitutes use of Plaintiff's registered marks in commerce.

150.   Tedder's/Tedder Industries' unauthorized use is likely to cause confusion, mistake or deceive; cause the public to believe that Tedder's/Tedder Industries' products are authorized, sponsored or approved by Plaintiff when they are not; and result in Tedder/Tedder Industries unfairly and illegally benefitting from Plaintiff's goodwill.

151.    Accordingly, Tedder and Tedder Industries have engaged in trademark infringement in violation of Sections 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b), and are liable to Plaintiff for all damages related thereto, including but not limited to actual damages, infringing profits and/or statutory damages, as well as attorney's fees.

152.    Tedder's/Tedder Industries' acts have caused, and will continue to cause, irreparable injury to Plaintiff.

153.    Plaintiff has no adequate remedy at law and is thus entitled to damages in an amount yet to be determined.

154.    Tedder's/Tedder Industries' egregious conduct in selling merchandise bearing the unauthorized trademarks even after being notified thereof in writing, is willful and intentional, and thus this constitutes an exceptional case.

### FOURTH CLAIM FOR RELIEF

**Contributory and/or Vicarious
Federal Trademark Infringement in Violation of
Sections 32(1)(a) and (b) of the Lanham Act
(15 U.S.C. § 1114)**

**(AGAINST DEFENDANTS TEDDER PROPERTIES AND TEDDER STRUCTURES)**

155.    Plaintiff hereby repeats each and every allegation set forth in paragraphs 1 to 154 above as if fully set forth herein.

156.    A landlord is responsible for the torts of those it permits on its premises "knowing or having reason to know that the other is acting or will act tortiously...." Restatement (Second) of Torts § 877(c) & cmt. d (1979).

157.    Tedder Properties and/or Tedder Structures had ample reason to know that goods infringing Plaintiff's trademark registrations were being manufactured and/or sold on its premises, intentionally shielded itself from the lawful consequences of having such knowledge,

and failed to evict and/or prevent its largest tenant, to wit, Tedder Industries, from continuing such unlawful conduct on its premises.

158.    Tedder Properties and/or Tedder Structures are therefore properly charged with actual and/or constructive knowledge of Tedder's/Tedder Industries' activities and sales, as each had sufficient knowledge or had sufficient reason to know that such activities were occurring on its premises and failed to act reasonably under the circumstances to prevent such unlawful conduct from occurring and/or continuing.

159.    Accordingly, Defendants Tedder Properties and/or Tedder Structures have engaged in contributory and/or vicarious trademark infringement in violation of Plaintiff's Trademarks in violation of Sections 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b), and are liable to Plaintiff for all damages related thereto, including but not limited to actual damages, infringing profits and/or statutory damages, as well as attorney's fees.

160.    Tedder Properties' and/or Tedder Structures' acts have caused, and will continue to cause, irreparable injury to Plaintiff.

161.    Plaintiff has no adequate remedy at law and is thus entitled to damages in an amount yet to be determined.

162.    Tedder Properties' and/or Tedder Structures' egregious conduct in knowingly contributing and inducing others to sell merchandise bearing unauthorized trademark registrations is willful and intentional, and thus this constitutes an exceptional case.

## FIFTH CLAIM FOR RELIEF

**Trade Dress Infringement,
False Designation of Origin, False Advertising and Unfair Competition
In Violation of Section 43(a) of the Lanham Act
(15 U.S.C. § 1125(a))**

**(AGAINST DEFENDANTS THOMAS TEDDER AND TEDDER INDUSTRIES)**

163.    Plaintiff hereby repeats each and every allegation set forth in paragraphs 1 to 162 above as if fully set forth herein.

164.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides, in relevant part, that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(1)(a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

165.    By making unauthorized use, in interstate commerce, of Plaintiff's AlienGear Trademarks, Thomas Tedder and Tedder Industries have: (a) infringed upon Plaintiff's trade dresses; (b) used a false designation of origin that is likely to cause confusion, mistake or deception as to the affiliation or connection of Tedder/Tedder Industries with Plaintiff and as to the origin, sponsorship, association or approval of Tedder's/Tedder Industries' goods by Plaintiff; and (c) unfairly competed with Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

166.    Tedder's/Tedder Industries' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations of fact, tending

**COMPLAINT**                                    51

to falsely or misleadingly describe and/or represent Tedder's/Tedder Industries' products as those of Plaintiff, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

167.    Tedder's/Tedder Industries' wrongful acts will continue unless and until enjoined by this Court.

168.    Tedder's/Tedder Industries' acts have caused and will continue to cause irreparable injury to Plaintiff.  Plaintiff has no adequate remedy at law and is thus damaged in an amount yet to be determined.

169.    Tedder's/Tedder Industries' egregious conduct in selling merchandise bearing the unauthorized trademarks even after being repeatedly notified thereof in writing, is willful and intentional.

## SIXTH CLAIM FOR RELIEF

**Contributory and/or Vicarious Trade Dress Infringement,
False Designation of Origin, False Advertising and Unfair Competition
In Violation of Section 43(a) of the Lanham Act
(15 U.S.C. § 1125(a))**

**(AGAINST DEFENDANTS TEDDER PROPERTIES AND TEDDER STRUCTURES)**

170.    Plaintiff hereby repeats each and every allegation set forth in paragraphs 1 to 169 above as if fully set forth herein.

171.    A landlord is responsible for the torts of those it permits on its premises "knowing or having reason to know that the other is acting or will act tortiously...." Restatement (Second) of Torts § 877(c) & cmt. d (1979).

172.    Tedder Properties and/or Tedder Structures had ample reason to know that goods infringing Plaintiff's trade dresses were being manufactured and/or sold on its premises, intentionally shielded itself from the lawful consequences of having such knowledge, and failed to evict and/or prevent its largest tenant, to wit, Tedder Industries, from continuing such

unlawful conduct on its premises.

173.    Tedder Properties and/or Tedder Structures are therefore properly charged with actual and/or constructive knowledge of Tedder's/Tedder Industries' activities and sales, as each had sufficient knowledge or had sufficient reason to know that such activities were occurring on its premises and failed to act reasonably under the circumstances to prevent such unlawful conduct from occurring and/or continuing.

174.    Accordingly, Defendant Tedder Properties and/or Tedder Structures have engaged in contributory and/or vicarious violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and are liable to Plaintiff for all damages related thereto, including but not limited to actual damages, infringing profits and/or statutory damages, as well as attorney's fees.

175.    Tedder Properties' and/or Tedder Structures' acts have caused, and will continue to cause, irreparable injury to Plaintiff.

176.    Plaintiff has no adequate remedy at law and is thus entitled to damages in an amount yet to be determined.

177.    Tedder Properties' and/or Tedder Structures' egregious conduct in knowingly contributing and inducing others to sell merchandise bearing an unauthorized trade dress is willful and intentional, and thus this constitutes an exceptional case.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**Cybersquatting in Violation of the
Anticybersquatting Consumer Protection Act ("ACPA")
(15 U.S.C. § 1125(d)(1))**

**(AGAINST DEFENDANT THOMAS TEDDER ONLY)**

178.    Plaintiff hereby repeats each and every allegation set forth in paragraphs 1 to 177 above as if fully set forth herein.

179.    15 U.S.C. § 1125(d)(1)(A) provides that:

A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

(i)     has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii)    registers, traffics in, or uses a domain name that—

    (I)     in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

    (II)    in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark…

180.    The Infringing Domain Name that Thomas Tedder registered on or about November 2012 with Internet Registrar GoDaddy is identical to, and/or confusingly similar to the Plaintiff's mark "AlienGear," which was distinctive at the time that Thomas Tedder registered the Infringing Domain Name.

181.    Thomas Tedder has registered and used the Infringing Domain Name with bad-faith intent to profit from Plaintiff's "AlienGear" mark.

182.    Thomas Tedder's activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

183.    Thomas Tedder had no *bona fide* noncommercial or fair use of Plaintiff's AlienGear mark.

184.    Thomas Tedder intended and/or intend to divert consumers away from Plaintiff to a website accessible under the Infringing Domain Name that could harm the goodwill represented by Plaintiff's AlienGear mark for commercial gain, and with the intent to tarnish and disparage Plaintiff's AlienGear mark by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Infringing Domain Name.

**COMPLAINT**                    54

185.    Thomas Tedder's acts have caused and will continue to cause irreparable injury to Plaintiff.  Plaintiff has no adequate remedy at law and is thus damaged in an amount yet to be determined.

### EIGHTH CLAIM FOR RELIEF

**Deceptive Acts and Practices Unlawful
in Violation of the New York General Business Law
(N.Y. Gen. Bus. Law §§ 349 and 350)**

**(AGAINST DEFENDANTS THOMAS TEDDER AND TEDDER INDUSTRIES)**

186.    Plaintiff hereby repeats each and every allegation set forth in paragraphs 1 to 185 above as if fully set forth herein.

187.    New York General Business Law, Section 349 states, in relevant part, that: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

188.    New York General Business Law, Section 350 states, in relevant part, that: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

189.    Through their importation, advertisement, distribution, offer to sell and sale of unauthorized products bearing Plaintiff's AlienGear Trademarks, Tedder and/or Tedder Industries have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

190.    Tedder's/Tedder Industries' deceptive acts or practices, as described herein, are materially misleading.  Such acts or practices have deceived or have a tendency to deceive a material segment of the public to whom Tedder/Tedder Industries have directed their marketing activities, and Plaintiff has been injured thereby.

191.    By the acts described above, Tedder/Tedder Industries have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of services in violation of Section 349 and 350 of the New York General Business Law.

192.    Tedder's/Tedder Industries' acts have caused, and will continue to cause, irreparable injury to Plaintiff.  Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

193.    Tedder's/Tedder Industries' egregious conduct in selling merchandise bearing the unauthorized trademarks even after being notified thereof in writing, is willful and intentional.

## NINTH CLAIM FOR RELIEF

### Trademark Infringement in Violation of New York State Common Law

### (AGAINST DEFENDANTS THOMAS TEDDER AND TEDDER INDUSTRIES)

194.    Plaintiff hereby repeats each and every allegation set forth in paragraphs 1 to 193 above as if fully set forth herein.

195.    Plaintiff owns all right, title and interest in and to Plaintiff's AlienGear Trademarks as described above, including all common law rights in Plaintiff's AlienGear Trademarks.

196.    The products sold by Tedder/Tedder Industries incorporate imitations of Plaintiff's common law trademarks.  Tedder's/Tedder Industries' use of Plaintiff Trademarks is unauthorized, and is likely to cause consumer confusion.

197.    By the acts described above, Tedder/Tedder Industries have engaged in trademark infringement in violation of the common law of the State of New York.

198.    Tedder's/Tedder Industries' acts have caused, and will continue to cause, irreparable injury to Plaintiff.  Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

**COMPLAINT**                                              56

199.    Tedder's/Tedder Industries' egregious conduct in selling merchandise bearing the unauthorized trademarks even after being notified thereof in writing, is willful and intentional.

**TENTH CLAIM FOR RELIEF**

**Unfair Competition in Violation of the New York Common Law**

**(AGAINST DEFENDANTS THOMAS TEDDER AND TEDDER INDUSTRIES)**

200.    Plaintiff hereby repeats each and every allegation set forth in paragraphs 1 to 199 above as if fully set forth herein.

201.    Thomas Tedder and Tedder Industries have palmed off their goods as those of Plaintiff, improperly trading upon Plaintiff's goodwill and valuable rights in and to Plaintiff's AlienGear Trademarks.

202.    Tedder/Tedder Industries committed the above alleged acts willfully, and in conscious disregard of Plaintiff's rights, and Plaintiff is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of them.

203.    By the acts described above, Tedder/Tedder Industries have engaged in unfair competition in violation of the common law of the State of New York.

204.    Tedder's/Tedder Industries' acts have caused and will continue to cause irreparable injury to Plaintiff.  Plaintiff has no adequate remedy at law and is thus damaged in an amount yet to be determined.

205.    Tedder's/Tedder Industries' egregious conduct in selling merchandise bearing the unauthorized trademarks even after being notified thereof in writing, is willful and intentional.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

1.     For a **FINAL JUDGMENT** that:

    a.  Thomas Tedder and Tedder Industries have engaged in trademark counterfeiting of Plaintiff's U.S. Trademark Reg. No. 4,905,818 in International Class 25 in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    b.  Tedder Properties and Tedder Structures have engaged in contributory and vicarious trademark counterfeiting of Plaintiff's U.S. Trademark Reg. No. 4,905,818 in International Class 25 in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    c.  Thomas Tedder and Tedder Industries have engaged in trademark infringement of Plaintiff's federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    d.  Tedder Properties and Tedder Structures have engaged in contributory and vicarious trademark infringement of Plaintiff's federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    e.  Thomas Tedder and Tedder Industries have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

    f.  Tedder Properties and Tedder Structures have engaged in contributory and vicarious infringement of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

    g.  Thomas Tedder has violated the Anticybersquatting Protection Act, 15 U.S.C. § 1125(d)(1)(A);

h.  Thomas Tedder and Tedder Industries have engaged in deceptive acts and practices unlawful in violation of Sections 349 and 350 of the New York General Business Law;

i.  Thomas Tedder and Tedder Industries have engaged in trademark infringement in violation of the common law of the State of New York;

j.  Thomas Tedder and Tedder Industries have engaged in unfair competition in violation of the common law of the State of New York; and

k.  That the above acts were done willfully, and/or intentionally.

2.  For entry of an **ORDER** permanently enjoining and restraining Defendants, and their officers, agents, servants, employees and attorneys and all those in active concert or participation with any of them, from:

a.  Using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's AlienGear Trademarks (as defined herein) for and in connection with any goods or their packaging not authorized by Plaintiff;

b.  Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiff's business reputation or dilute the distinctive quality of Plaintiff's AlienGear Trademarks;

a.  Using any false description or representation, including words or other symbols tending falsely to describe or represent Defendants' unauthorized goods or their packaging as being those of Plaintiff, or sponsored by or associated with Plaintiff, and from offering such goods into commerce;

b.  Further infringing Plaintiff's AlienGear Trademarks by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale,

advertising, promoting, renting, displaying or otherwise disposing of any products or their packaging not authorized by Plaintiff that bear any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiff's AlienGear Trademarks;

c.  Using any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiff's AlienGear Trademarks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products or their packaging in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiff, or to any goods sold, manufactured, sponsored or approved by, or connected with Plaintiff;

d.  Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which may or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by Defendants are in any manner associated or connected with Plaintiff, or are sold, manufactured, licensed, sponsored, approved or authorized by Plaintiff;

e.  Infringing Plaintiff's AlienGear Trademarks or Plaintiff's rights therein, or using or exploiting Plaintiff's AlienGear Trademarks;

f.  Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or

displaying of all unauthorized products which infringe Plaintiff's AlienGear Trademarks; and

g. Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action.

3. For an entry of an **ORDER** directing that Defendants deliver up for destruction to Plaintiff all unauthorized products, advertisements and packaging in their possession or under their control bearing any of Plaintiff's AlienGear Trademarks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. § 1118.

4. For an entry of a **FURTHER ORDER** transferring or canceling at Plaintiff's election, the Infringing Domain Name and any other domain names used by Defendants to engage in unauthorized activities, to Plaintiff's control so they may no longer be used for unauthorized purposes.

5. For entry of a **FURTHER ORDER** that, upon Plaintiff's request, the Internet Registries shall take all actions necessary to ensure that the Infringing Domain Name be transferred and or disabled accordingly.

6. For entry of a **FURTHER ORDER** requiring Defendants to disseminate corrective advertisements in a form approved by the Court to acknowledge their violations of the law hereunder, and to ameliorate the false and deceptive impressions produced by such violations.

7.     For such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products or associated packaging manufactured, sold or otherwise circulated or promoted by Defendants are authorized by Plaintiff or related in any way to Plaintiff's products.

8.     For an award of all profits that Defendants have derived from using Plaintiff's AlienGear Trademarks, trebled, as well as costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117; and awarding profits, damages and fees, to the full extent available, pursuant to Sections 349 and 360-l of the New York General Business Law; and punitive damages to the full extent available under the common law.

9.     For **COSTS OF SUIT**, and for such other and further relief as the Court shall deem appropriate.

## A TRIAL BY JURY IS DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all triable issues raised by this Complaint.

August 2, 2017                                    Respectfully Submitted,

Joseph C. Gioconda (JG4716)
Joseph M. Forgione (JF8630)
GIOCONDA LAW GROUP PLLC
100 Park Avenue, 16th Floor
Telephone: (212) 235-1220
Facsimile: (888) 697-9665
*joseph.gioconda@giocondalaw.com*
*joseph.forgione@giocondalaw.com*

*Attorneys for Plaintiff*
*AlienGear Universal, LLC*

**COMPLAINT**                                    62